1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   JERALD CLINTON (J.C.)              )   Case No. 2:11-CV-00098 JAM-JFM
     EAGLESMITH, RAMONA EAGLESMITH,     )
12   EILEEN COX, and BRUCE BARNES,      )   ORDER GRANTING IN PART AND
                                        )   DENYING IN PART DEFENDANTS'
13                     Plaintiffs,      )   MOTION TO DISMISS AND MOTION
                                        )   TO STRIKE
14        v.                            )
                                        )
15   JEFF RAY, as an individual, SUE    )
     SEGURA, as an individual, and      )
16   BOARD OF TRUSTEES OF PLUMAS        )
     COUNTY OFFICE OF                   )
17   EDUCATION/PLUMAS COUNTY UNIFIED    )
     SCHOOL DISTRICT,                   )
18                                      )
                       Defendants.      )
19   _____)

20        This matter is before the Court on Defendants' Jeff Ray

21   ("Ray"), Sue Segura ("Segura") and Board of Trustees of Plumas

22   County Office of Education/Plumas County Unified School District

23   ("the District") Motion to Dismiss the Plaintiffs' Jerald Clinton

24   Eaglesmith ("J.C."), Ramona Eaglesmith ("Ramona"), Eileen Cox

25   ("Cox") and Bruce Barnes ("Barnes") First Amended Complaint ("FAC")

26   (Doc. # 28) for failure to state a claim pursuant to Federal Rule

27   of Civil Procedure 12(b)(6).  Plaintiffs oppose the motion to

28

                                        1

1   dismiss.[1]  For the reasons set forth below, Defendants' motion is

2   GRANTED in part, and DENIED in part.

3       Defendants also bring a Motion to Strike (Doc. #31) certain

4   allegations from the FAC, which Plaintiffs oppose (Doc. #42).  For

5   the reasons set forth below, the motion to strike is DENIED.

6

7                I.   FACTUAL AND PROCEDURAL BACKGROUND

8       J.C. is an employee of the District, who works as a teacher

9   and previously worked as the coach for the Quincy High School

10  basketball team.  J.C. alleges that he was subjected to

11  discrimination, harassment and retaliation by Defendants in

12  violation of Title VII, FEHA and Section 1983, based on his

13  membership in a protected class.  J.C. is Native American.  His

14  wife Ramona, who is Native American and African American, is not an

15  employee of the District but alleges that Defendants violated her

16  rights under sections 1981 and 1983, by interfering with her

17  provision of dance lessons to members of the school cheerleading

18  team.  Cox and Barnes are employees of the District, who allege

19  retaliation in violation of Title VII and FEHA, for communicating

20  their support of J.C. and Ramona.

21      The FAC brings a number of allegations against Defendants.

22  The FAC alleges that Defendants singled out J.C. for harassment

23  after he and Ramona did a presentation in 2006 at the school,

24  discussing the Native American perspective on Thanksgiving.  J.C.

25  alleges that Defendants interfered with his coaching, ostracized

26  him, questioned his spiritual beliefs, referred to him in

27  _____

28  [1] This matter was determined to be suitable for decision without
    oral argument. E.D. Cal. L.R. 230(g).  Oral argument was originally
    scheduled for August 3, 2011.

1  derogatory terms in front of his colleagues, gave him an

2  "unsatisfactory" performance evaluation, and refused to rehire him

3  as the basketball coach for the 2010-2011 school year.  The FAC

4  further alleges that Cox and Barnes were threatened with discipline

5  and forced out of some of the positions they held at the school,

6  for communicating support of J.C. and Ramona.

7

8                          II.  OPINION

9      A.   Legal Standard

10     A party may move to dismiss an action for failure to state a

11  claim upon which relief can be granted pursuant to Federal Rule of

12  Civil Procedure 12(b)(6).  In considering a motion to dismiss, the

13  court must accept the allegations in the complaint as true and draw

14  all reasonable inferences in favor of the plaintiff.  Scheuer v.

15  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

16  Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319,

17  322 (1972).  Assertions that are mere "legal conclusions," however,

18  are not entitled to the assumption of truth.  Ashcroft v. Iqbal,

19  129 S. Ct. 1937, 1950 (2009) (citing Bell Atl. Corp. v. Twombly,

20  550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, a

21  plaintiff needs to plead "enough facts to state a claim to relief

22  that is plausible on its face."  Twombly, 550 U.S. at 570.

23  Dismissal is appropriate where the plaintiff fails to state a claim

24  supportable by a cognizable legal theory.  Balistreri v. Pacifica

25  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

26     Upon granting a motion to dismiss for failure to state a

27  claim, the court has discretion to allow leave to amend the

28  complaint pursuant to Federal Rule of Civil Procedure 15(a).

1   "Absent prejudice, or a strong showing of any [other relevant]

2   factor[], there exists a presumption under Rule 15(a) in favor of

3   granting leave to amend."  Eminence Capital, L.L.C. v. Aspeon,

4   Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  "Dismissal with

5   prejudice and without leave to amend is not appropriate unless it

6   is clear . . . that the complaint could not be saved by amendment."

7   Id.

8        B.   Claims for Relief

9             1.   Discriminatory Employment Practices

10       The first claim for relief alleges that J.C., Cox and Barnes

11  were subject to adverse and discriminatory employment practices

12  committed against them by the District, in violation of Title VII,

13  42 U.S.C. § 2000e and e(2), and FEHA, Cal. Gov. Code § 12940(a).

14  JC alleges that he was discriminated against based on his race,

15  national origin and religion, and his opposition to the District's

16  alleged unlawful employment practices, under Title VII, 42 U.S.C.

17  § 2000e(2).  Cox and Barnes allege discrimination based on their

18  protected status as non-minorities perceived to be assisting and

19  associating with J.C., under Title VII, 42 U.S.C. § 2000(e) et seq.

20  and Cal. Gov. Code § 12940.  The Motion to Dismiss does not seek to

21  dismiss J.C.'s allegations in the first claim for relief, but does

22  seek to dismiss the allegations of discrimination by Cox and

23  Barnes.

24       Title VII of the Civil Rights Act of 1964 makes it "an

25  unlawful employment practice for an employer . . . to discriminate

26  against any individual with respect to his compensation, terms,

27  conditions, or privileges of employment, because of such

28  individual's race, color, religion, sex, or national origin."  42

1  U.S.C. § 2000e-2(a)(1).  Title VII claims follow a burden shifting

2  framework.  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972).

3  However, an employment discrimination complaint need not contain

4  specific facts establishing a prima facie case, but instead must

5  contain only a short and plain statement of the claim showing that

6  the pleader is entitled to relief.  Morgan v. Napolitano, 2010 WL

7  3749260, * 5 (E.D. Cal. Sept. 23, 2010) (citing Swierkiewicz v.

8  Sorema N.A., 534 U.S. 506, 508 (2002).  Twombly explicitly did not

9  overturn Swierkiewicz's holding.  Id.,citing Twombly, 550 U.S. at

10 569-70.

11     FEHA prohibits employers from discriminating against an

12 employee because of race, religious creed, color, national origin,

13 ancestry, physical disability, mental disability, medical

14 condition, marital status, sex, age or sexual orientation.  Cal.

15 Gov. Code § 12940(a).  Claims of discrimination under FEHA and

16 Title VII may be assessed under the same standards, because Title

17 VII and FEHA operate under the same guiding principles.  Kohler v.

18 Inter-Tel Technologies, 244 F.3d 1167, 1172-73 (9th Cir. 2001)

19 (citations omitted).  "Although the wording of Title VII differs in

20 some particulars from the wording of FEHA, the antidiscriminatory

21 objectives and overriding policy purposes of the two acts are

22 identical."  Id.  "Because FEHA is modeled on Title VII, California

23 courts often rely upon federal interpretations of Title VII when

24 analyzing analogous provisions of FEHA."  Solano v. Regents of

25 University of CA, 2005 WL 1984473, *4 (E.D. Cal. Aug. 15, 2005)

26 (citations omitted).  Accordingly, federal courts may analyze a

27 plaintiff's federal and state claims under federal law.  See e.g.

28 Id.; Nagar v. Foundation Health Systems, Inc., 57 Fed. Appx. 304,

1  306 (9th Cir. 2003).

2      FEHA expressly provides a cause of action for unlawful

3  discrimination based on association with someone in a protected

4  class.  Kap-Cheong v. Korea Express, USA, Inc., 2003 WL 946103, *3

5  (N.D. Cal. Feb. 12, 2003) (citing Cal. Gov. Code 12926(m)).  Title

6  VII, unlike, FEHA, does not specifically delineate a cause of

7  action for unlawful discrimination based on association.

8  "Nonetheless, many federal courts have construed Title VII to

9  protect individuals who are the victims of discriminatory animus

10 towards third parties with whom the individual associates."  Id. at

11 *4.

12     The FAC alleges that the District discriminated against Cox

13 and Barnes by taking adverse employment actions against them

14 (including eliminating work space, disciplinary investigations,

15 false accusations, forced resignation or removal from certain paid

16 positions) and depriving them of rights under the Equal Protection

17 Clause.  Cox and Barnes allege that the District perceived them as

18 "assisting and associating" with J.C. and that they "communicated

19 their support of J.C." to defendant Segura.  They do not allege

20 that they are members of a protected class, but the Court may infer

21 from the allegations that they are stating a discrimination claim

22 based on association.

23     The District argues that Cox and Barnes have not stated a

24 claim for discrimination under Title VII or FEHA because they fail

25 to plead that they are members of a protected class, and fail to

26 plead facts showing that they assisted or associated with J.C.

27 Moreover, the District argues that the FAC does not allege any

28 special relationship, or even acquaintance relationship, between

6

1   Cox and Barnes and J.C. that would form the basis of a claim for

2   discrimination on the basis of association.

3       While courts have found that a plaintiff who is not a member

4   of a protected class may state a claim for discrimination under

5   FEHA or Title VII, "there must be some association, actual or

6   perceived, in order to fall within the protection of Title VII or

7   FEHA.  In each of the above Title VII cases, there existed some

8   type of relationship-personal, familial, or otherwise-between the

9   plaintiff and the person whom the plaintiff claims was the target

10  of the employer's discriminatory animus." Kap-Cheong, 2003 WL

11  946103 at *4 (citing cases, each of which involve relationships

12  such as parent-child and husband-wife).  However, even a friendship

13  or acquaintance relationship is sufficient to state a claim for

14  association discrimination under FEHA.  See Setencich v. American

15  Red Cross, 2008 WL 449862, *4-7 (N.D. Cal. Feb. 15, 2008).

16      Here, Cox and Barnes allege that they communicated their

17  support for J.C., and were perceived as supporting him.  Defendants

18  are correct that the FAC lacks allegations of a special

19  relationship to J.C. and lacks allegations of how Cox and Barnes

20  communicated their support for J.C.  However, taking the

21  allegations of support for J.C. in the FAC as true, and drawing all

22  reasonable inferences, as this Court is required to do at this

23  stage in the pleadings, it can be inferred that as J.C.'s coworkers

24  Cox and Barnes at a minimum had an acquaintance relationship with

25  him.  Accordingly, the motion to dismiss the first claim for relief

26  is DENIED.

27          2.   Retaliation

28      The second claim for relief alleges that the District

7

1  retaliated against J.C., Cox and Barns, in violation of FEHA and

2  Title VII.  Again, the District does not seek to dismiss the

3  allegations of retaliation brought by J.C., but does seek to

4  dismiss the allegations of retaliation brought by Cox and Barnes.

5  The District raises the same arguments against the claim for

6  retaliation as it does against the claim for discrimination

7  discussed above.  Likewise, Cox and Barnes also offer the same

8  arguments in support of their claim for retaliation as in support

9  of their claim for discrimination.

10       Cox and Barnes allege that the District's supervisory

11  employees, including defendants Segura and Ray, unlawfully

12  retaliated against them by taking actions that adversely and

13  materially affected the terms and conditions of their employment.

14  Cox and Barnes allege that they were retaliated against because

15  they opposed the supervisors' unlawful employment practices and

16  were perceived as assisting and associating with J.C. and Ramona.

17  They argue that because J.C. was making complaints about

18  discrimination, and communicating his opposition to what he alleged

19  were adverse actions taken against him because of his race and

20  religion, communication of their support for J.C. and the

21  subsequent adverse consequences constitutes a plausible claim for

22  retaliation.

23       The District argues that the FAC is insufficient because it

24  merely states that Cox and Barnes "communicated" their support for

25  J.C., but does not plead facts showing that Cox and Barnes actively

26  engaged in opposing alleged unlawful employment practices or

27  otherwise put the District on notice of its alleged unlawful

28  practices.

1   FEHA makes it unlawful for an employer to discharge, expel or

2   otherwise discriminate against any person because the person has

3   opposed any practices forbidden by FEHA or has filed a complaint,

4   testified or assisted in any proceeding.  See Cal. Gov. Code

5   § 12940(h).  Additionally, "when an employee protests the actions

6   of a supervisor such opposition is also protected activity." Trent

7   v. Valley Elec. Ass'n, 41 F.3d 524, 526 (9th Cir. 1994).  An

8   employment action qualifies as adverse "if it is reasonably likely

9   to deter employees from engaging in protected activity." Ray v.

10  Henderson, 217 F.3d 1243 (9th Cir. 2000).

11      In Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028 (2005) the

12  court explained that FEHA protects an employee against unlawful

13  discrimination with respect not only to ultimate employment actions

14  such as termination or demotion, but also to the entire spectrum of

15  employment actions that are reasonably likely to materially affect

16  an employee's job performance or opportunity for advancement in his

17  or her career.  See Id. at 1053-54.  Further, "there is no

18  requirement that an employer's retaliatory acts constitute one

19  swift blow, rather than a series of subtle, yet damaging injuries."

20  Id. at 1055.  In determining whether a plaintiff has suffered an

21  adverse employment action, "it is appropriate to consider

22  plaintiff's allegations collectively under the totality-of-the

23  circumstances approach."  Id. at 1052 n. 11.

24      Here, the FAC has alleged that J.C. made complaints and

25  actively opposed the District's actions against him, and suffered

26  retaliation for his actions.  The FAC further alleges that Cox and

27  Barnes supported J.C. and communicated this support to Segura and

28  Ray, resulting in retaliatory acts against them.  Whether Cox' and

1  Barnes' particular manner of communicating support constituted a
2  protected activity is a factual issue that the Court will not
3  consider in ruling on a motion to dismiss.  Taking the allegations
4  of the FAC as true, as the Court must at this early stage in the
5  pleadings, Cox and Barnes have brought sufficient allegations to
6  state a claim for retaliation under FEHA and Title VII.
7  Accordingly, the motion to dismiss the second claim for relief is
8  DENIED.
9       3. Harassment and Hostile Work Environment
10      The third claim for relief brings a claim of harassment and
11 hostile work environment under Title VII, 42 U.S.C. § 2000(e), and
12 FEHA, Cal. Gov. Code § 12940(j).  J.C. brings this claim against
13 the District, for alleged harassment based on his race and
14 religion.
15      The elements of a hostile work environment are: (1) plaintiff
16 was subjected to verbal or physical conduct because of his race;
17 (2) the conduct was unwelcome; and (3) the conduct was sufficiently
18 severe or pervasive to alter the conditions of plaintiff's
19 employment and create an abusive working environment.  Irish v.
20 City of Sacramento, 2006 WL 224436, *3 (E.D. Cal. Jan. 30, 2006),
21 (citing Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir.
22 2003)).
23      The FAC alleges that J.C. was initially harassed by Ray during
24 the period from 2004-2007, while J.C. served as Head Coach of the
25 basketball team.  The FAC alleges that Ray confronted J.C.
26 following J.C.'s school presentation on the Native American
27 perspective of Thanksgiving, questioned him about his religious
28 belief, and expressed disapproval that J.C. followed Native

American spiritual traditions as opposed to believing in Jesus or
the Christian god.  The FAC also alleges that Ray encourage
insubordination against J.C., and encouraged parents to complain
about, among other things, J.C. telling "Indian stories" on or
during team practice, and excluded J.C. from use of a facility used
by the other athletic staff.  The FAC further alleges that in 2009,
despite knowing of Ray's harassment, Segura hired him to be the
athletic director and supervise J.C.  Additionally, the FAC alleges
numerous other incidences of racially motivated harassment of J.C.,
including allowing another employee to repeatedly park a truck
adorned with a noose and racist bumper stickers containing
threatening statements towards people of color, adjacent to J.C.'s
classroom.

     Defendants contend that the allegations in the FAC amount to
merely personnel management actions, and do not show severe or
pervasive harassment or a hostile work environment.  Defendants
further argue that the FAC does not show that harassment was
motivated by J.C.'s race or religion.  Lastly, Defendants argue
that all allegations that fall outside the statute of limitations
should be dismissed.  This argument is further discussed in the
motion to strike.

     The cases cited by Defendants in support of the motion to
dismiss are primarily summary judgment cases, which are subject to
different standards of review than motions to dismiss.  At this
stage in the pleadings, the numerous allegations brought by J.C.
are sufficient to state a claim of harassment and hostile work
environment, taking the allegations as true and drawing all
reasonable inferences in favor of the plaintiffs.  Further, under

1  the continuing violations theory discussed below for the motion to

2  strike, allegations that fall outside the statute of limitations

3  may still be included in a claim.  Accordingly, the Motion to

4  Dismiss the third claim for relief is DENIED.

5        4.  Harassment and Hostile Work Environment

6        In the fourth claim for relief, J.C. brings a claim of

7  harassment and hostile work environment under Title VII, 42 U.S.C.

8  § 2000e, and FEHA, Cal. Gov. Code § 12940, against Ray and Segura.

9  In his opposition, he concedes that he cannot bring a claim against

10 Ray and Segura under Title VII.  Accordingly, the portion of the

11 fourth claim for relief alleging a violation of Title VII is

12 DISMISSED, WITH PREJUDICE.

13       Defendants argue that the FEHA claim should also be dismissed

14 against Ray and Segura because the FAC fails to plead sufficient

15 facts showing "severe or pervasive" harassment.  Defendants argue

16 that the FAC alleges only actions that amount to personnel

17 management decisions, not acts of harassment.  As discussed above,

18 the FAC contains numerous allegations regarding Ray's harassment

19 and hostility towards J.C.  The FAC further alleges that, among

20 other things, Segura supported and encouraged Ray's acts of

21 discrimination, assigned J.C. alone to use a custodian's storage

22 closet and a small toilet room instead of the Coaches Commons,

23 barred J.C.'s son from the athletic areas, and singled out J.C. for

24 a performance evaluation.

25       As discussed above, the allegations in the FAC are sufficient

26 to state a claim for harassment and hostile work environment

27 against Ray and Segura, in violation of FEHA.  Accordingly, the

28 motion to dismiss the FEHA allegations of the fourth claim for

1  relief is DENIED.

2

3          5.   <u>Failure To Prevent Discrimination, Retaliation,</u>
4          <u>Harassment and Hostile Work Environment</u>

5          The fifth claim for relief alleges that the District failed to

6  prevent discrimination, retaliation or harassment against J.C., Cox

7  and Barnes, in violation of FEHA, section 12940(k).  Section

8  12940(k) requires employers to take all reasonable steps necessary

9  to prevent discrimination and harassment from occurring.  To state

10  a claim for failure to prevent under 12940(k), a plaintiff must

11  allege that (1) plaintiff was subjected to discrimination,

12  harassment or retaliation, (2) defendant failed to take all

13  reasonable steps necessary to prevent discrimination, harassment or

14  retaliation, and (3) this failure caused plaintiff to suffer

15  injury, damage, loss or harm.  <u>Leland v. City and County of San</u>

16  <u>Francisco</u>, 576 F.Supp.2d 1079, 1103 (N.D. Cal. 2008).

17          The FAC alleges that the District failed to take all

18  reasonable steps necessary to prevent discrimination, retaliation

19  and harassment.  The District argues that the FAC is devoid of

20  allegations pertaining to what investigatory steps the District did

21  or did not take, or what anti-discrimination policies were or were

22  not in place.  The District contends that the FAC only alleges that

23  J.C. filed grievances, which were denied.  Plaintiffs argue that

24  the FAC contains allegations that the District ignored the

25  discrimination that was occurring towards J.C., Cox and Barnes,

26  ignored complaints brought by J.C. and his union representative

27  concerning conduct by Segura and Ray, encouraged and authorized

28  Segura and Ray's conduct, and refused to reverse disciplinary

actions taken against J.C. regarding dress, despite acknowledging that there was no dress code in effect.

The District relies on California Fair Employment and Housing Com'n v. Gemini, 122 Cal.App.4th 1003 (2004) to argue that in order to show failure to prevent, Plaintiffs must allege failure to investigate and lack of a nondiscrimination policy. However, Gemini is not persuasive as it dealt with a petition for mandate and assessed whether sufficient evidence existed to support a decision reached by the Fair Housing and Employment Commission. While it gave examples of what an employer might do to prevent workplace discrimination, it did not address pleading requirements to state a claim for failure to prevent discrimination and harassment. Here, the allegations in the FAC are sufficient to state a claim at this early stage that the District failed to prevent discrimination, harassment and retaliation against J.C., Cox and Barnes. Accordingly, the motion to dismiss the fifth claim for relief is DENIED.

6.   42 U.S.C. § 1983, Violation of Equal Protection and First Amendment Rights

The sixth claim for relief alleges that Ray and Segura violated J.C.'s equal protection and First Amendment rights, in violation 42 U.S.C. § 1983 by discriminating against him through their conduct during the 2009-2010 school year, due to his race, color, national origin, religion and public expressions concerning matters of public concern. The FAC alleges that this conduct was directed at J.C. while he was Head Coach of the basketball program, and materially and adversely affected the terms and condition of his employment.

1    To prevail in a §1983 civil action against state actors for

2    the deprivation of "rights, privileges, or immunities secured by

3    the Constitution and laws, a plaintiff must show that (1) acts by

4    the defendants (2) under color of state law (3) deprived him of

5    federal rights, privileges or immunities and (4) caused him damage.

6    Section 1983 is not itself a source of substantive rights, but

7    merely provides a method for vindicating federal rights elsewhere

8    conferred.  Accordingly, the conduct complained of must have

9    deprived the plaintiff of some right, privilege or immunity

10   protected by the Constitution or laws of the United States."

11   Thornton v. City of St. Helens, 425 F.3d 1158, 1163-64 (9th Cir.

12   2005) (internal citations omitted).

13       The "Equal Protection Clause of the Fourteenth Amendment

14   commands that no State shall 'deny to any person within its

15   jurisdiction the equal protection of the laws,' which is

16   essentially a direction that all persons similarly situated should

17   be treated alike."  City of Cleburne v. Cleburne Living Ctr, Inc.

18   473 U.S. 432, 439 (1985) (internal citations omitted).  To state a

19   claim under 42 U.S.C. § 1983 for a violation of the Equal

20   Protection Clause of the Fourteenth Amendment, a plaintiff "must

21   show that the defendant acted with an intent or purpose to

22   discriminate against the plaintiff based upon membership in a

23   protected class."  T.A. ex rel. Amador v. McSwain Union Elementary

24   Sch. Dist., 2009 WL 1748793, at *8 (E.D. Cal. Jan. 18, 2009).  A

25   plaintiff may satisfy this showing by alleging four separate

26   elements: (1) that the defendants treated plaintiff differently

27   from others similarly situated; (2) this unequal treatment was

28   based on an impermissible classification; (3) the defendants acted

1    with discriminatory intent in applying this classification; and

2    (4) plaintiff suffered injury as a result of the discriminatory

3    classification.  Id.

4         The FAC alleges that J.C. was treated differently by Ray and

5    Segura from other similarly situated non-minority coaches and

6    teaching staff, due to his race, color and religious beliefs.  The

7    FAC alleges that Ray and Segura's conduct was intentionally

8    discriminatory, and that J.C. suffered injury from the

9    discrimination.

10        Taking the allegations of the FAC as true, as the Court must

11   at this stage of the litigation, J.C. has stated a claim under

12   Section 1983 for violation of his equal protection rights.

13        Defendants further argue that Ray and Segura cannot be held

14   liable under Section 1983 for violating Title VII.  However, the

15   section 1983 claim is based not on Title VII, but on violation of

16   the Equal Protection clause and the First Amendment.  The motion to

17   dismiss and reply brief contain only a cursory argument in

18   opposition to the equal protection and first amendment allegations,

19   arguing that the FAC fails to state a claim and that Ray and Segura

20   are entitled to qualified immunity.

21        The doctrine of qualified immunity shields public officials

22   sued in their individual capacity from monetary damages, unless

23   their conduct violates "clearly established" law of which a

24   reasonable public officer would have known.  Saucier v. Katz, 533

25   U.S. 194, 199 (2001).

26        The court must make a two-step inquiry in deciding the issue

27   of qualified immunity.  Saucier, 533 U.S. at 200.  First, the court

28   must determine whether, under the facts alleged, taken in the light

1   most favorable to the plaintiff, a violation of a constitutional

2   right occurred.  Id.  If so, the court must then ask whether the

3   constitutional right was clearly established at the time of the

4   violation. Id.

5         Initially, the Supreme Court in Saucier held that these two

6   inquiries must be decided in rigid order. Saucier, 533 U.S. at 200.

7   That is, a district court had to resolve whether a violation of a

8   constitutional right occurred before it could evaluate whether the

9   right was clearly established.  Recognizing, however, that "there

10  are cases in which it is plain that a constitutional right is not

11  clearly established but far from obvious whether in fact there is

12  such a right," the Supreme Court recently relaxed the order of

13  analysis.  Pearson v. Callahan, 555 U.S. 223, 237 (2009).  In

14  Pearson, the Court held that the Saucier analysis may be addressed

15  in either order if the second step is clearly dispositive and can

16  address the matter efficiently.  Id. at 241-42. "Immunities and

17  other affirmative defenses may be upheld on a motion to dismiss

18  only when they are established on the face of the complaint." T.A.

19  ex rel. Amador, 2009 WL 1748793 at *5.

20        It is not clearly established on the face of the FAC that Ray

21  and Segura are entitled to qualified immunity.  J.C. has stated a

22  claim for violation of his equal protection rights, and a

23  reasonable school official would have known that it is a

24  constitutional violation to treat the employees he or she

25  supervises differently on the basis of race.  Thus with the limited

26  facts before it at this time, the Court does not find Ray and

27  Segura are entitled to qualified immunity, and the motion to

28  dismiss the equal protection allegations of the sixth claim for

1   relief is DENIED.

2         Both parties analyze the sixth claim for relief

3   (discrimination in violation of the First Amendment) and the eighth

4   claim for relief (retaliation in violation of the First Amendment)

5   together, without distinguishing between the two claims.  Reviewing

6   the allegations of the FAC, and the parties arguments (all of which

7   cite cases dealing addressing First Amendment retaliation) the

8   Court finds that the claims are redundant.  The sixth claim alleges

9   that Ray and Segura discriminated against J.C. in retaliation for

10  exercising his First Amendment rights, and the eighth claim alleges

11  that Ray and Segura directed retaliatory actions (the

12  aforementioned discrimination) towards J.C. after he exercised his

13  First Amendment rights.  The eighth claim also contains additional

14  allegations that Ray and Segura directed actions towards J.C.'s

15  wife and son to further retaliate against J.C. for exercising his

16  First Amendment rights.  Accordingly, the First Amendment

17  allegations in the sixth claim for relief are dismissed, with

18  prejudice.

19              7.   <u>42 U.S.C. § 1983, 42 U.S.C. § 1981, Denial of Equal
                     Protection, First Amendment and Contract Rights</u>
20

21        The seventh claim for relief alleges that Ramona was denied

22  her Equal Protection rights and her First Amendment right of

23  association under 42 U.S.C. § 1983, and denied her right to make

24  and enforce contracts under 42 U.S.C. § 1981.  Ramona brings this

25  claim against Segura, alleging that Segura intentionally and

26  recklessly discriminated against her because of her race, color,

27  national origin, and relationship with J.C., with the purpose and

28  effect of causing her emotional and economic injury.

1    The FAC alleges that Ramona was a choreographer and coach of

2 the high school dance team, and the student cheerleaders were

3 taking and intending to take private dance lessons from Ramona.

4 Segura is alleged to have discontinued Ramona's participation as a

5 choreographer and coach of the dance team, and threatened to

6 disqualify any cheerleader who took private lessons from Ramona.

7    Defendants argue that the FAC does not allege that Ramona was

8 an employee of the District, nor that any cheerleaders actually

9 refrained from taking private lessons from Ramona.  Accordingly,

10 Defendants contend that Ramona has failed to show any injury, and

11 without injury, she lacks standing and fails to state a claim.

12 Defendants argue that Ramona cannot assert the rights of a third

13 party (the cheerleaders) without alleging that the cheerleaders are

14 unable to assert their own rights.  Defendants further contend that

15 the FAC fails to allege the existence of any contractual

16 relationship between Ramona and anyone else, fails to show how

17 Segura was acting under color of law in any of her alleged conduct

18 towards Ramona.

19    Ramona argues that she is not attempting to assert third party

20 standing, rather she herself suffered from discrimination and is

21 the only who can bring this claim.  Article III standing is present

22 only when (1) a plaintiff suffers a concrete, particularized injury

23 which actual or imminent; (2) there is a causal connection between

24 the injury and the conduct complained of; and (3) the injury will

25 likely be redressed by a favorable decision.  Falcon v. Richmond

26 Police Dept., 1998 WL 774630, *3 (N.D. Cal. Oct. 30, 1998) (citing

27 Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)).  Here, Ramona

28 has pled that she was emotionally and economically injured by

1    Segura's actions in discontinuing Ramona's participation as a dance

2    team choreographer and coach, and Segura's threats to the

3    cheerleaders.   Accordingly, she has made sufficient allegations to

4    have standing.

5         However, while Ramona's allegations are sufficient for

6    standing purposes, the Court finds that she has failed to state a

7    claim under Section 1983.   There are insufficient allegations in

8    the FAC concerning Segura's treatment of Ramona as compared to her

9    treatment of other similarly situated dance team

10   coaches/choreographers or cheerleader dance instructors, to bring a

11   claim under the equal protection clause.   Ramona's claim of

12   violation of her First Amendment right of association is also

13   insufficient.

14        The First Amendment does not expressly contain a "right of

15   association" but it does protect certain intimate human

16   relationships as well as the right to associate for the purposes of

17   engaging in those expressive activities otherwise protected by the

18   Constitution.   Wittman v. Saenz, 108 Fed. Appx. 548, 549 (9th Cir.

19   2004).   "The First Amendment right of association protects those

20   relationships, including family relationships, that presuppose deep

21   attachments and commitments to the necessarily few other

22   individuals with whom one shares not only a special community of

23   beliefs but also distinctly personal aspects of one's life."   Id.

24   at 549-550 (internal citations omitted).   There are simply no

25   allegations in the FAC that Segura interfered with Ramona's right

26   to associate with any person.   Accordingly, the FAC does not state

27   a claim for violation of Ramona's First Amendment right of

28   association.

1    The Court turns next to Ramona's allegations that her right to

2    make and enforce contracts was violated.

3            42 U.S.C. § 1981 provides that all persons
             shall have the same right . . . to make and
4            enforce contracts . . . as is enjoyed by white
             citizens.  The statute defines, make and
5            enforce contracts to include the making,
             performance, modification and termination of
6            contract, and the enjoyment of all benefits,
             privileges, terms and conditions of the
7            contractual relationship.

8    Flores v. Von Kleist, 739 F.Supp.2d 1236, 1256 (E.D. Cal. 2010)

9    (internal citations omitted).  To state a claim under Section 1981

10   a plaintiff must identify an "impaired contractual relation," by

11   showing that intentional racial discrimination prevented the

12   creation of a contractual relationship or impaired an existing

13   contractual relationship.  Schiff v. Barrett, 2010 WL 2803037, *4

14   (E.D. Cal. July 14, 2010) (internal citations omitted).

15   Here, the FAC fails to allege the existence of any contractual

16   relationship, whether between Ramona and the District or Ramona and

17   the cheerleaders.  Without the necessary allegations of an impaired

18   contractual allegation, Ramona has failed to state a claim under

19   Section 1981.  The seventh claim for relief is dismissed with leave

20   to amend.

21           8.   42 U.S.C. § 1983, Retaliation in Violation of First
                  Amendment Rights
22

23   The eighth claim for relief is brought by J.C. against Ray and

24   Segura, and alleges that they retaliated against J.C. for

25   exercising his First Amendment rights by taking adverse actions

26   against him, and taking adverse actions against his wife and son.

27   Claims against a government official for First Amendment

28   retaliation require that an employee demonstrate: "(1) that he or

                                    21

she engaged in protected speech; (2) that the employer took adverse employment action" and (3) that his or her speech was a substantial or motivating factor for the adverse employment action." <u>Grosz v. Lassen Community College Dist.</u>, 360 Fed.Appx. 795, 797 (9th Cir. 2009) (citing <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 973 (9th Cir. 2003)).  In evaluating the First Amendment rights of a public employee, the threshold inquiry is whether the statements at issue substantially address a matter of public concern.  <u>Brewster v. Board of Educ. of Lynwood Unified School Dist.</u>, 149 F.3d 971, 978 (9th Cir. 1998) (citing <u>Roe v. City & County of San Francisco</u>, 109 F.3d 578, 584 (9th Cir. 1997).  If employee expression relates to an issue of political, social, or other concern to the community, it may fairly be said to be of public concern.  <u>Id.</u>  Adverse employment actions are actions taken by the defendants that were reasonably likely to deter the plaintiff from engaging in protected activity under the First Amendment.  <u>Grosz</u>, 360 Fed.Appx. at 798. One may show that the protected activity was a substantial or motivating factor for the retaliatory actions due by alleging temporal proximity between the protected activity and the adverse actions.  <u>Id.</u>

Here, the FAC alleges that J.C. exercised his First Amendment rights when he made school presentations about the Native American perspective of Thanksgiving.  The FAC also alleges that J.C. exercised his First Amendment rights when he spoke out in opposition to alleged unlawful discrimination occurring at the high school.  J.C. alleges that the adverse actions of Ray and Segura that have been discussed above were taken against him in retaliation for exercising his First Amendment rights.  The eighth

1   claim also alleges that Ray and Segura took actions against his son

2   and his wife, to further retaliate and dissuade J.C. from

3   exercising his First Amendment rights.

4   　　　Defendants argue that J.C. fails to state a claim for

5   retaliation in violation of the First Amendment, because the FAC

6   does not allege he made a "statement" for which was retaliated

7   against.  Further, Defendants contend that Ray and Segura are

8   accused only of personnel management actions.  Lastly, Defendants

9   assert that even if J.C. has successfully pled a claim, Ray and

10  Segura are entitled to qualified immunity.

11  　　　The issues alleged in the FAC that J.C. spoke out about

12  (Native American issues and discrimination in the school) may be

13  considered matters of public concern.  Likewise, the FAC alleges

14  numerous actions taken against J.C. by Ray and Segura that may be

15  considered adverse actions.  However, while the FAC alleges that

16  the majority of J.C.'s protected activities and Ray and Segura's

17  adverse actions took place during the 2009-2010 school year, the

18  FAC is lacking allegations of temporal proximity that would allow

19  the Court to infer that the adverse actions were indeed connected

20  to the protected activity.  With the exception of J.C.'s 2006

21  speech on Native American perspectives, the FAC does not allege the

22  dates on which J.C. engaged in his other protected activity nor the

23  dates on which Ray and Segura took alleged adverse actions.

24  Accordingly, the Court dismisses the claim for violation of the

25  First Amendment, with leave to amend.  As to Ray and Segura's

26  assertion that they are entitled to qualified immunity, the Court

27  does not find that it is clear on the face of the FAC that they are

28  entitled to qualified immunity, and thus will not grant qualified

1    immunity on this claim at this time.

2         C.   Motion to Strike

3         Lastly, the Court will address Defendants' Motion to Strike,

4    brought pursuant to Federal Rule of Civil Procedure 12(f).

5    Defendants ask the Court to strike paragraphs 16, 17 and 18 of the

6    FAC.  Paragraph 16 alleges that during the 2004-2007 period, J.C.

7    served as Head Coach of the basketball team and Ray was involved in

8    selecting a volunteer coach named Howard Hughes.  Hughes refused to

9    accept J.C. as his supervisor and engaged in insubordinate acts.

10   Paragraph 17 alleges that on November 21, 2006, J.C., Ramona and

11   their son gave presentations on the Native American perspective

12   about Thanksgiving at school wide assemblies.  These presentations

13   were the subject of an editorial and opinion piece in the local

14   newspaper on November 29, 2006.  It is alleged that soon after the

15   presentation Ray confronted J.C. about his Native American

16   spiritual beliefs, expressed disapproval, and thereafter exhibited

17   hostility.  Paragraph 18 alleges that Ray engaged in conduct during

18   J.C.'s 2004-2007 tenure as Head Coach that included supporting

19   parental opposition to the presence of J.C.'s son, condoning

20   Hughes' insubordination, encouraging parental complaints about J.C.

21   telling "Indian stories" and urging officials to cite J.C. for a

22   technical foul when he went to assist an injured player.

23        Defendants argue that these paragraphs should be stricken

24   because they are outside the statute of limitations.  J.C. received

25   right-to-sue notifications from California's Department of Fair

26   Employment and Housing on October 18, 2010 and December 29, 2010,

27   and right-to-sue letters from the U.S. Department of Justice on

28   behalf of the Equal Employment Opportunity Commission on November

24

1  3, 2010 and February 28, 2011.

> Rule 12(f) provides in pertinent part that the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . Motions to strike are disfavored an infrequently granted.  A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.

Bassett v. Ruggles et al., 2009 WL 2982895 at *24(E.D. Cal. Sept. 14, 2009) (internal citations omitted).

Under federal law, an aggrieved person must file charges within either 180 or 300 (if complaint also filed with a State agency) days of the alleged unlawful employment practice.  See 42 U.S.C. § 2000e-5(e)(1) and (f)(1).  Under the California Fair Employment and Housing Act ("FEHA"), "no complaint may be filed after the expiration of one year from the date upon which the alleged [discriminatory] practice or refusal to cooperate occurred."  Cucuzza v. City of Santa Clara, 104 Cal.App.4th 1031, 1040 (2002).  Failure to file a timely administrative complaint bars bringing a civil action.  See e.g. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113-114 (2002) (holding that under 42 U.S.C. § 2000e-5 discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges); Morgan v. Regents of University of California, 88 Cal.App.4th 52, 63 (2000) (holding that under FEHA, the timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages).

Under California law, the continuing violations doctrine "allows liability for unlawful employer conduct occurring outside

1   the statute of limitations if it is sufficiently connected to

2   unlawful conduct within the limitations period." Richards v. CH2M

3   Hill, Inc., 26 Cal. 4th 798, 802 (Cal. 2001).  The employee must

4   prove three prongs in order to invoke the continuing violation

5   doctrine under FEHA.  Id. at 823.  First, the conduct that occurred

6   within the limitations period must be "sufficiently similar in kind

7   to the conduct that falls outside the period."  Harris v. City of

8   Fresno, 625 F.Supp.2d 983, 1023 (E.D. Cal. 2009).  Second, the

9   conduct must have occurred with "reasonable frequency."  Id.

10  Third, the conduct must not have acquired "a degree of permanence

11  such that the employee was on notice that further efforts at

12  informal conciliation to obtain reasonable accommodation or end

13  harassment [would] be futile."  Id.

14      Defendants argue that Ray's conduct was not a continuing

15  violation, and thus J.C. should not be able to include allegations

16  that occurred during the 2004-2007 period.  Defendants argue that

17  these allegations are irrelevant, immaterial and/or impertinent

18  under Rule 12(f).  Plaintiffs argue that the allegations should not

19  be stricken, as they constitute a continuing violation.

20      Motions to strike are disfavored, and must meet a high

21  standard before the Court will strike allegations from a complaint.

22  See Rule 12(f), supra.  Here, following further discovery of the

23  facts and circumstances surrounding the alleged events and conduct

24  that took place from 2004-2207, and later from 2009-2011,

25  Plaintiffs may be able to prove that Ray's conduct is a continuing

26  violation.  This case is not at the summary judgment stage, unlike

27  the cited cases, in which the courts engaged in a fact intensive

28  analysis under the continuing violations test (see eg. Cucuzza,

1 | *supra*; <u>Harris</u>, *supra* ).  While J.C. may be unable to use the
2 | allegations from the 2004-2007 period to support a Title VII claim,
3 | given the different rules surrounding the statute of limitations
4 | for federal and state claims, the Court will not strike these
5 | paragraphs at this time, as they may prove relevant to the state
6 | claims.  Accordingly, Defendants' motion to strike is DENIED.

7 |
8 |                          III. ORDER
9 |     Defendants Motion to Dismiss is GRANTED in part and DENIED in
10 | part, as set forth below:
11 |     1.   The motion to dismiss the first claim for relief is
12 | DENIED.
13 |     2.   The motion to dismiss the second claim for relief is
14 | DENIED.
15 |     3.   The motion to dismiss the third claim for relief is
16 | DENIED.
17 |     4.   The motion to dismiss the Title VII claim within the
18 | fourth claim for relief is GRANTED.  The Title VII claim within the
19 | fourth claim for relief is DISMISSED WITH PREJUDICE. The motion to
20 | dismiss the FEHA claim within the fourth claim for relief is
21 | DENIED.
22 |     5.   The motion to dismiss the fifth claim for relief is
23 | DENIED.
24 |     6.   The motion to dismiss the Equal Protection claim within
25 | the sixth claim for relief is DENIED.  The motion to dismiss the
26 | First Amendment claim within the sixth claim for relief is GRANTED.
27 | The First Amendment discrimination claim within the sixth claim for
28 | relief is DISMISSED, WITH PREJUDICE.

1    7.    The motion to dismiss the seventh claim for relief is
2 GRANTED.   The seventh claim for relief is DISMISSED, WITH LEAVE TO
3 AMEND.

4    8.    The motion to dismiss the eighth claim for relief is
5 GRANTED.   The eighth claim for relief is DISMISSED, WITH LEAVE TO
6 AMEND.

7    9.    The motion to strike is DENIED.

8    Plaintiffs are ordered to file a Second Amended Complaint
9 within twenty-one (21) days of the date of this order.   It is
10 further ordered that the allegations regarding J.C.'s alleged
11 "medical condition" should not be included in the Second Amended
12 Complaint, as Plaintiffs' opposition brief did not oppose their
13 dismissal and did not respond to any of Defendants' arguments
14 concerning the dismissal of these allegations.

15    IT IS SO ORDERED.

16 Dated: October 5, 2011

17                              _____
                               JOHN A. MENDEZ,
18                             UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28